UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| KIA AMERICA, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Case No. 6:23-cv-00722-ADA |
| | § | |
| LEO MCADAMS, | § | **Jury Trial Demanded** |
| | § | |
| Defendant, | § | |
| | § | |

**<u>Defendant's Answer to Plaintiff's Complaint for Injunctive Relief</u>**

Defendant Leo McAdams ("McAdams") answers Plaintiff Kia America, Inc.'s

Complaint for Injunctive Relief (Dkt. 1) as follows:

**<u>Nature of the Action</u>**

1.      This is an action seeking injunctive relief against Defendant McAdams for

misappropriation of KUS' non-public, highly sensitive, confidential, and trade secret

information.

**ANSWER:  Admitted.**

2.      Defendant McAdams is currently a Field Technical Representative

employed by KUS. On or about September 8, 2023, McAdams was placed on

administrative leave from KUS m connection with the allegations contained herein.

**ANSWER:  Admitted.**

3.      Between July 13, 2023, and July 28, 2023, McAdams used the access he was

given as a KUS Field Technical Representative to transfer over 3,000 files containing

KUS' non-public, confidential information to an unauthorized storage account, in

violation of KUS' company policies and the Non-Disclosure Agreement McAdams executed with KUS. In a separate incident, KUS discovered that in the week prior to being placed on administrative leave, McAdams uploaded *over 44,000 additional files* containing KUS' non-public, confidential information to an unauthorized electronic storage account and his personal email account.

**ANSWER: Denied.**

4.    Upon discovering his actions, KUS demanded the return of McAdams's company- issued devices and its misappropriated data. McAdams has returned the company-issued devices, but refuses to promptly return KUS' misappropriated data or confirm in writing that he has not disclosed or misused it.

**ANSWER: Denied.**

5.    The materials that McAdams improperly accessed and exfiltrated contain KUS' highly sensitive, confidential, and trade secret information, including information about existing and developing technical support issues, customer-specific technical claims, and non-public information regarding KUS' transactions with its network of dealers. McAdams's refusal to return that information, along with his refusal to confirm whether the information was improperly used by him or disclosed to others, places KUS' confidential and trade secret information at high risk of disclosure and misuse by third parties or McAdams himself. McAdams's actions are in violation of his contractual obligations to KUS, KUS' Employee Handbook, and both Texas state and federal law.

The value of KUS' confidential and trade secret information is well in excess of $75,000.00.

**ANSWER:  Denied.**

6.      In addition, McAdams remains in possession of an Airbag Control Unit ("ACU") tied to a specific KUS vehicle and owned by KUS. Despite request, McAdams has failed to return the ACU. The ACU cannot be replaced with another one since it contains vehicle-specific information. As such, McAdams is liable to KUS for conversion of the ACU.

**ANSWER:  Denied.**

7.      As a result of his actions and complete refusal to respond to KUS' repeated requests for the return of its data and equipment, KUS has had to resort to filing this lawsuit to prevent further harm to its business arising from McAdams' s misappropriation of KUS' trade secret information. KUS seeks to enjoin Defendant McAdams from utilizing or disclosing KUS' trade secret and confidential information, to enjoin McAdams from continuing to violate the terms of his agreement with KUS, and to compel the return of KUS' confidential and trade secret information and KUS property.

**ANSWER:  Admitted that KUS has filed this lawsuit, otherwise denied.**

<u>**Parties**</u>

8.      Kia America, Inc. (formerly Kia Motors America, Inc.) is a California corporation with its principal place of business in Irvine, California.

**ANSWER:  Admitted.**

9.      Leo McAdams is an individual who is domiciled in and a citizen of the State of Texas, and can be served with process at 11211 Inks Cove, Temple, Texas 76502.

**ANSWER: Admitted.**

## Jurisdiction and Venue

10.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 based on the diversity of citizenship of the parties and the fact that the amount in controversy exceeds $75,000.00. This Court also has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, because KUS' federal Defend Trade Secrets Act ("DTSA") claim, brought under 18 U.S.C. § 1836, *et seq.*, raises a federal question. This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. §1367.

**ANSWER: Denied as to the amount in controversy, otherwise admitted.**

11.     This Court has personal jurisdiction over McAdams he is a citizen of and domiciled within the State of Texas, because he conducts business with KUS within the State of Texas, and because he has committed tortious acts within the State of Texas.

**ANSWER: Denied that he has committed tortious acts, otherwise admitted.**

12.     Venue is also proper in this District under 28 U.S.C. § 1391(b)(l) because this is the judicial district where McAdams resides.

**ANSWER: Admitted.**

## Events Giving Rise to This Action
## McAdams's Employment with KUS

13.     Kia America, Inc. is the American sales, marketing, and distribution arm of Kia Corporation, which manufactures, markets, and sells automobiles globally.

**ANSWER: Admitted.**

14.     On or about May 11, 2015, Defendant McAdams joined Plaintiff KUS as a Field Technical Representative (later a Field Technical Specialist) to investigate and analyze complicated technical problems that occur in Kia vehicles in the field, and to assist KUS and its network of dealers in handling difficult vehicle technical concerns that cannot be resolved through other means.

**ANSWER:  Admitted.**

15.     As a Field Technical Representative and then as a Field Technical Specialist, McAdams was given access to KUS' highly sensitive, confidential, and trade secret information, including information concerning existing and developing technical support issues, customer-specific claims and information, and non-public information regarding KUS' transactions with its network of dealers. Put differently, by virtue of his employment with KUS, McAdams had direct access to confidential and trade secret information that significantly impacts and contributes to the success of KUS' organization by improving customer/dealer satisfaction, reducing vehicle repurchase expenses, and providing important product quality data to company management.

**ANSWER:  Denied.**

16.     As a condition of his employment with KUS and being granted access to its confidential information, McAdams executed a Non-Disclosure Agreement (the "Agreement") on May 4, 2015, to protect KUS' confidential information.

**ANSWER:  Denied.**

## KUS' Protection of Its Confidential
## <u>Information and Trade Secrets</u>

17.    Because of the value of KUS' confidential and trade secret information to

KUS' success and competitive advantages, KUS closely guards its confidential

information and trade secrets. KUS takes specific measures to restrict access to and

preserve the confidentiality of this information, including, but not limited to, the

following:

a.    Requiring its employees to sign agreements containing covenants designed to maintain confidentiality and to return KUS property upon termination of their employment with KUS;

b.    Prohibiting its employees from, directly or indirectly, using, disclosing, or otherwise giving to any ,unauthorized third party KUS confidential information;

c.    Restricting remote employee access to resources on KUS' internal corporate network on an "as needed" basis;

d.    Requiring employees with access to KUS' systems to acknowledge and agreed to adhere to policies regarding the use of those systems, including but not limited to a KUS' Electronic Communication System and Document Management Policy;

e.    Requiring employees to use encryption or some other approved form of security for all communication of proprietary or confidential information that is transmitted over the internet or via other electronic media.

**ANSWER:  Defendant lacks sufficient information to admit or deny this**

**allegation and therefore denies it.**

18.    KUS rigorously maintains the confidentiality of its information because

the information provides KUS a competitive advantage in the marketplace from which

it derives economic value.

**ANSWER: Defendant lacks sufficient information to admit or deny this allegation and therefore denies it.**

19.     Any KUS competitor who improperly possessed and used this confidential information, particularly about KUS' customers and operations, would gain an immediate and unfair competitive advantage, and would be able to unfairly compete with KUS.

**ANSWER: Defendant lacks sufficient information to admit or deny this allegation and therefore denies it.**

<u>**McAdams's Contractual Obligations to Kus**</u>

20.     When McAdams joined KUS, and as a condition of his employment and before being given access to any confidential information, he was required to enter into a Non-Disclosure Agreement dated May 4, 2015. A true and correct copy of the Agreement is attached as <u>**Exhibit 1.**</u>

**ANSWER: Denied.**

21.     The Agreement contains certain restrictions on McAdams's activities during and after termination of his employment with KUS, along with restrictions on McAdams's use of KUS' confidential and trade secret information. In the Agreement, McAdams acknowledged that he was being given access to valuable KUS' confidential information, defined in the Agreement as including, but not limited to the company's:

> "trade secrets, products, formulas, patterns, graphics, designs, devices, ideas, discoveries, creations, records, reports, contracts, proposals, research, inventions, processes, drawings, sketches, layouts, software programs, compilations of information, employee information such as salaries/wages/compensation, customer names/lists/data, specifications,

> manuals, financial, pricing, manufacturing and/or technical information, professional or scientific know-how and/or any other information not generally known outside of [KUS], and/or designated as confidential or proprietary by [KUS], which is owned, held and/or used by [KUS] in the operations of [KUS'] business and/or for its customers and/or vendors."

(Exhibit 1, § 1.)

    **ANSWER:  Denied.**

    22.    Regarding that confidential information, McAdams acknowledged and agreed that:

> "I shall use my best efforts to prevent disclosure and will not, directly or indirectly, during or after termination of my employment, use, disclose or give to any third party not authorized to receive, any such Confidential Information, except as required in the course and scope of my employment with [KUS]."

*Id.*

    **ANSWER:  Denied.**

    23.    McAdams further agreed that all originals and all copies of confidential information "shall not be removed from [KUS'] premises without proper prior authorization," and that upon request, he would return all property of the company provided to him by KUS and/or are in his possession as a result of his employment by KUS. (Exhibit 1, § 2.)

    **ANSWER:  Denied.**

    24.    In addition to his obligations under the Agreement, McAdams also agreed to KUS' employee policies contained in the KUS Employee Handbook. A copy of the KUS Employee Handbook is attached hereto as **<u>Exhibit 2</u>**.  KUS' Document Management Policy, which McAdams agreed to abide by, prohibits employees from

removing or transferring KUS files from company premises or from company electronic networks for personal use or for the purpose of retaining them, unless otherwise protected by law. (Exhibit 2, § 3.19)

**ANSWER: Admitted.**

25.    McAdams further agreed that in any action to enforce the confidentiality restrictions in the Agreement, that injunctive relief would be appropriate, and that McAdams may be specifically compelled to perform his obligations under the Agreement. (Exhibit 1, § 4.)

**ANSWER: Admitted.**

26.    KUS therefore seeks injunctive relief for McAdams's failure to perform his obligations under the Agreement.

**ANSWER: Admitted that KUS seeks injunctive relief, otherwise denied.**

**<u>Defendant McAdams Breaches His Agreement</u>**

27.    Between July 13, 2023, and July 28, 2023, McAdams used the access he was given as a KUS Field Technical Representative to transfer over 3,000 files containing KUS' non-public, confidential information, and upload them to an unauthorized storage account, in violation of KUS' company policies and the Agreement. In a separate incident in September 2023, it was discovered that McAdams used his access to transfer *over 44,000 additional files* containing KUS' non-public, confidential information and upload those files to an unauthorized storage account and his personal email account.

**ANSWER: Denied.**

28.     McAdams did not have authorization to upload KUS' non-public, confidential information to an unauthorized storage account or his personal email account, and there is no legitimate reason why McAdams would have needed to upload those files to an unauthorized storage account as part of his job duties.

**ANSWER: Denied.**

29.     KUS only recently discovered McAdams's misconduct, and immediately contacted him for an explanation. When confronted with that information during a call with KUS representatives, McAdams at first claimed that doing so was unintentional, but then refused to commit to immediately returning that information. McAdams also refused to immediately turn over his KUS- issued laptop computer, cellular phone, and tablet, and as a result, KUS placed McAdams on paid administrative leave effective September 8, 2023.

**ANSWER: Denied.**

30.     On September 12, 2023, KUS sent a cease and desist letter to McAdams, both through his personal email and at his home, demanding that he immediately return KUS' equipment and data, that he confirm that the information he exfiltrated was not being shared or disclosed to any third party, and that he agree to a forensic imaging and remediation protocol of the personal storage account and email account to which he sent KUS' data. A true and correct copy of that correspondence is attached hereto as **Exhibit 3.** McAdams ultimately returned KUS' equipment, for which a forensic imaging is pending, but has refused to comply with the other demands contained within the cease-and-desist letter. As of the filing of this lawsuit, McAdams continues to ignore

KUS' attempts to regain possession of the materials that he wrongfully exfiltrated. Instead, McAdams now claims that he was "framed" by another KUS employee. Notably, McAdams does not deny being in possession of KUS' data in his personal email and storage accounts.

      **ANSWER:  Denied.**

      31.    In addition, McAdams is in possession of an Airbag Control Unit ("ACU") tied to a specific KUS vehicle and owned by KUS. While McAdams indicated that he would return the ACU by shipping it to KUS, he has not done so, and when KUS asked to confirm a time when the unit could be picked up from his house, McAdams would not confirm a time when the unit could be picked up. The ACU cannot be replaced with another one since it contains vehicle-specific information related to an accident involving that vehicle: data that cannot be replicated.

      **ANSWER:  Denied.**

      32.    McAdams has expressed no intention of returning KUS' confidential and trade secret information and continues to ignore KUS' repeated demands for its return. It is apparent that McAdams can only be compelled by this Court to abide by his contractual obligations, as well as state and federal law, and to return KUS' equipment and confidential and trade secret information.

      **ANSWER:  Denied.**

**Effect of the Defendant's Conduct**

      33.    McAdams's unauthorized use and potential disclosure of KUS' confidential and trade secret information places KUS' goodwill, customer relationships,

trade secrets, and confidential and proprietary information at significant risk of destruction or loss, which cannot be adequately addressed at law.

**ANSWER: Denied.**

34.    McAdams's actions have already irreparably harmed, and will continue to irreparably harm, the value of KUS' confidential and trade secret information.

**ANSWER: Denied.**

35.    Consequently, KUS now sues McAdams for breach of his Agreement, conversion, and misappropriation of trade secrets. KUS seeks an order enjoining Defendant McAdams from (a) continuing his knowing and intentional breach of his Agreement; (b) utilizing or disclosing KUS' confidential and trade secret information on behalf of himself or any other party; and (c) possessing KUS' confidential and proprietary information. KUS seeks an Order directing McAdams to immediately return that information to KUS, and to cease any destruction of relevant evidence.

**ANSWER: Admitted that KUS has sued McAdams, otherwise denied.**

### Count I
### <u>Breach of Contract</u>

36.    KUS hereby repeats, realleges, and incorporates by reference the allegations that are contained in Paragraphs 1 through 35.

**ANSWER: Defendant repeats its responses to the previous allegations.**

37.    The Agreement that McAdams executed, and which is attached hereto as Exhibit 1, constitutes a valid and enforceable agreement.

**ANSWER: Denied.**

38.     KUS performed all the duties and obligations it agreed to and owed to McAdams under the Agreement.

**ANSWER: Denied.**

39.     Under the Agreement, McAdams is prohibited from retaining or removing from KUS' premises the original and all copies of files, records, or documents of any nature whatsoever without KUS' prior authorization. (Exhibit 1, § 2.) McAdams is likewise required to return all such items which were provided to him by KUS or are in his possession as a result of his employment with KUS upon request. *(Id.)*

**ANSWER: Denied.**

40.     McAdams breached the Agreement through his improper and illegal uploading and retention of KUS' confidential information and trade secrets, and his ongoing refusal to return the files and information at issue.

**ANSWER: Denied.**

41.     Because of McAdams's breaches and prospective breaches of the Agreement, KUS has been irreparably injured and continues to face irreparable injury. KUS is threatened with losing the value of its confidential and proprietary information, including information concerning its customers, product specifications, financials, pricing, manufacturing and technical information, professional or scientific know-how and any other information not generally known outside of KUS, or used by KUS in the operations of KUS' business or for its customers and vendors, for which a remedy at law is inadequate.

**ANSWER: Denied.**

42.    Accordingly, McAdams must be enjoined and restrained by Order of this Court.

**ANSWER:  Denied.**

## Count II
## Misappropriation of Trade Secrets
## (Texas Uniform Trade Secret Act)

43.    KUS hereby repeats, realleges, and incorporates by reference the allegations contained in Paragraphs 1 through 35.

**ANSWER:  Defendant repeats its responses to the previous allegations.**

44.    KUS confidential and proprietary information includes, inter alia, information regarding KUS' customers, product specifications, financials, pricing, manufacturing and technical information, professional or scientific know-how and any other information not generally known outside of KUS or used by KUS in the operations of KUS' business or for its customers and vendors.

**ANSWER:  Defendant lacks sufficient information to admit or deny this allegation and therefore denies it.**

45.    The aforementioned information constitutes trade secrets, pursuant to the Texas Uniform Trade Secret Act, Texas Civ. Prac. & Rem. Code §§ 134A et seq., because KUS derives independent economic value from this information not being generally known to the public and not being readily ascertainable by proper means by other persons who could obtain economic value from its disclosure or use, and because the information is the subject of reasonable efforts to maintain its secrecy.

**ANSWER: Defendant lacks sufficient information to admit or deny this allegation and therefore denies it.**

46.     Defendant McAdams has misappropriated, and threatens to continue to misappropriate, KUS' trade secrets without its consent, in violation of Texas law.

**ANSWER: Denied.**

47.     Specifically, as discussed above, McAdams accessed and exfiltrated thousands of confidential files to an unauthorized storage account and to his personal email account. Despite repeated demands, McAdams steadfastly refuses to return that information or confirm to KUS that he has not and will not disclose that information to third parties or misuse it.

**ANSWER: Denied.**

48.     McAdams's actions are willful and malicious. As part of his employment with KUS, McAdams acknowledged that his unauthorized use of KUS' confidential information would result in irreparable damage to KUS and its business and properties. (Exhibit 1, § 4.)

**ANSWER: Denied.**

49.     Unless restrained, McAdams will continue to retain, improperly access, and otherwise misappropriate KUS' trade secrets and confidential information. Because of the actual misappropriation of KUS' trade secrets, KUS has been injured and faces irreparable injury.

**ANSWER: Denied.**

## Count III
### Misappropriation of Trade Secrets in Violation of the
### Federal Defend Trade Secrets Act 18 U.S.C. § 1832, *Et Seq.*

50.    KUS hereby repeats, realleges, and incorporates by reference the

allegations contained in Paragraphs 1 through 35.

**ANSWER:  Defendant repeats its responses to the previous allegations.**

51.    The Defend Trade Secrets Act ("DTSA") defines "trade secret" to include

all forms and types of financial, business, or economic information, including patterns,

plans, compilations, methods, techniques, processes, procedures, or programs, if (A) the

owner thereof has taken reasonable measures to keep such information secret; and (B)

the information derives independent economic value, actual or potential, from not

being generally known to, and not being readily ascertainable through proper means

by, the public.  See 18 U.S.C. §§ 1836, 1839.

**ANSWER:  Admitted.**

52.    Defendant McAdams acquired and/or is using KUS' trade secrets by

improper means and without authorization. In particular, McAdams obtained trade

secrets from KUS by improperly using access afforded to him as a Field Technical

Representative to access KUS' highly sensitive information. McAdams then exfiltrated

that information to an unauthorized storage account and his personal email account, in

violation of both his contractual Agreement and KUS' Document Management Policy.

**ANSWER:  Denied.**

53.    The information that McAdams misappropriated and continues to

misappropriate constitutes trade secrets within the meaning of the DTSA. Such

information derives independent economic value from not being generally known to, or readily ascertainable by proper means by, the public; other persons can obtain economic value from its disclosure or use; and it is the subject of significant efforts to maintain its secrecy.

**ANSWER: Denied.**

54.    As detailed above, KUS takes reasonable and appropriate measures to protect the confidentiality of the above-described trade secrets.

**ANSWER: Defendant lacks sufficient information to admit or deny this allegation and therefore denies it.**

55.    Defendant McAdams knew or should have known that KUS' trade secrets: (a) are confidential; (b) were acquired under circumstances giving rise to a duty to maintain their secrecy or limit their use; (c) were developed or acquired by KUS at great expense and effort; (d) are maintained as confidential and are not generally available to the public or KUS' competitors; and (e) are critical to KUS' ability to conduct its business successfully.

**ANSWER: Denied.**

56.    By using, refusing to return, and/or threatening to use KUS' trade secrets, McAdams has misappropriated and threatens to misappropriate KUS' trade secrets in violation of the DTSA, which allows injunctive relief for actual or threatened misappropriation of trade secrets.

**ANSWER: Denied.**

57.    The information that McAdams has misappropriated and threatens to misappropriate relates to KUS' highly confidential strategies for its nationwide operations and thus involves products and services that are sold in, utilized throughout, and/or travel through interstate commerce.

**ANSWER:  Denied.**

58.    McAdams's continued use and retention of KUS' trade secrets, as well as the potential disclosure of such information, will harm and/or threaten to harm KUS and its legitimate business interests.

**ANSWER:  Denied.**

59.    McAdams's actions were willful and malicious.

**ANSWER:  Denied.**

60.    Because McAdams's misconduct is ongoing and it poses a threat of significant irreparable harm that cannot be compensated by money alone, KUS requests that this Court grant injunctive relief against McAdams from actual or threatened disclosure or utilization of KUS' trade secrets and compel the immediate return of KUS' information.

**ANSWER:  Denied.**

### Count IV
### Conversion

61.    KUS hereby repeats, realleges, and incorporates by reference the allegations contained in Paragraphs 1 through 35.

**ANSWER:  Defendant repeats its responses to the previous allegations.**

62.     This claim for conversion is based upon Defendant McAdams' refusal to return KUS physical equipment in the form of the KUS Airbag Control Unit ("ACU") and is not based upon his misappropriation of the Company's confidential or trade secret information.

**ANSWER:  Denied.**

63.     KUS has the right to immediate possession of the ACU that it rightfully owns and is wrongfully possessed by McAdams.

**ANSWER:  Denied.**

64.     Without justification, McAdams has interfered, and continues to interfere, with KUS' property in the form of the ACU by refusing to return it to KUS.

**ANSWER:  Denied.**

65.     Defendant McAdams' actions have deprived KUS of the use and possession of its property, and specifically of the KUS ACU.

**ANSWER:  Denied**

66.     KUS is entitled to immediate possession of its property, and was entitled to such possession at the time of McAdams' conversion of the ACU. KUS has been harmed and continues to be harmed by McAdams' conversion of the ACU.

**ANSWER:  Denied.**

**Prayer for Relief**

McAdams denies that Plaintiff is entitled to judgment or any of the relief sought in its Complaint for Injunctive Relief.

**Affirmative Defenses**

McAdams asserts the following affirmative defenses without assuming the burden of proof when such burden would otherwise be on Plaintiff:

1.  The Agreement is unenforceable.

2.  McAdams has returned the module to Kia.

3.  Kia has not suffered any damages by McAdams's action.

4.  The Agreement was signed under duress.

5.  Kia has not taken reasonable measures to protect its alleged trade secrets.

**Jury Demand**

McAdams requests a trial by jury on all matters and issues properly tried to a jury pursuant to Federal Rules of Civil Procedure 38 and 39 and other applicable federal and state law.

Dated:  November 13, 2023          Respectfully submitted,

*/s/ Arthur Gollwitzer, III*
Arthur Gollwitzer III
   Texas Bar No. 24073336
   agollwitzer@jw.com
Jackson Walker LLP
100 Congress Avenue, Suite 1100
Austin, Texas  78701
Telephone: 512.236.2268
Facsimile:  512.236.2002

Thomas G. Pasternak
   admitted *pro hac vice*
   tpasternak@taftlaw.com
Taft Stettinius and Hollister LLP
111 E. Wacker Drive, Suite 2600
Chicago, IL  60601
Telephone: 312.836.4134
Facsimile:  312.527.4011

**Attorneys for Defendant Leo McAdams**

## Certificate of Service

I, Arthur Gollwitzer III, an attorney of record in this matter, hereby certify that on November 13, 2023, I electronically filed the following document:

**Defendant's Answer to Plaintiff's Complaint for Injunctive Relief**

with the Clerk of the United States District Court for the Western District of Texas, Waco Division, using the CM/ECF system, which will send notification and a copy of this filing to the following counsel of record:

SEYFARTH SHAW LLP
Kevin J. Mahoney
SBN 6299398
kmahoney@seyfarth.com
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606-6448
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

Eron F. Reid
Texas Bar No. 24100320
ereid@seyfarth.com
700 Milam, Suite 1400
Houston, Texas 77002
Telephone: (713) 225-2300
Facsimile: (713) 225-2340

Attorneys for Plaintiff Kia America, Inc.

*/s/ Arthur Gollwitzer III*
Arthur Gollwitzer III